UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| **REGINA M. THORNTON**<br><br>**Plaintiff,**<br><br>v.<br><br>**IPSEN BIOPHARMACEUTICALS, INC.**<br><br>**Defendant.** | Civil Action No.: 1:23-cv-11171-JCB |

### PLAINTIFF'S OPPOSITION TO DEFENDANT'S MOTION TO DISMISS SECOND AMENDED COMPLAINT

The Defendant, Ipsen Biopharmaceuticals, Inc., (hereinafter, the "Defendant") has moved, pursuant to Fed. R. Civ. P. 12(b)(6) to dismiss the Plaintiff's Amended Complaint in its entirety, with prejudice. The Plaintiff, Regina M. Thornton (hereinafter, the "Plaintiff") opposes Defendant's Motion and respectfully submits it must be denied in its entirety.

### PREMILINARY STATEMENT

In the instant matter, an important fact must be kept in mind: being vaccinated with the COVID-19 vaccine neither prevents a person from contracting the disease nor in spreading the disease. Any claim otherwise is a fraudulent claim.

The leading authority on the disease has been stating throughout the so-called COVID-19 pandemic that **being vaccinated does not prevent the spread of the disease**. The Federal Center for Disease Control and Prevention (hereinafter, the "CDC"), for example, again stated in their June 23, 2022 posting that "People who are vaccinated may still get COVID-19". The June 23rd update says that "When someone who is vaccinated with either a primary series or a primary series plus a booster does get infected with the virus that causes COVID-19, it is referred to as a

1

"vaccine breakthrough infection".[1] More importantly, the CDC has consistently said that, "People who get vaccine breakthrough infections **can spread COVID-19 to other people.**" (emphasis in the original). The CDC, the national agency that presumably knows more about the spread of COVID-19 than any other entity, added:

> When more virus is circulating, more breakthrough infections will occur even when vaccination rates are high. Even if you are vaccinated, if you live in a *county with a high COVID-19 Community Level*, you and others in your community, whether vaccinated or not, should take more steps to protect yourself and others, like wearing a mask in indoor public places" (emphasis in the original).

In other words, the CDC appears to be indicating that the way to prevent spreading the COVID-19 is to wear a mask, to keep one's distance from others and maintain strict sanitary habits. **Being vaccinated has virtually no effect on preventing the spread of COVID-19**. One can be vaccinated and still contract the disease and spread it to others.

## STANDARD OF REVIEW

The Defendant has moved, pursuant to Fed. R. Civ. P. 12(b)(6) to dismiss the Plaintiff's Second Amended Complaint. The Plaintiff opposes Defendant's Motion to Dismiss and respectfully submits it must be denied in its entirety.

When deciding a motion to dismiss under Rule 12(b)(6), a court must "construe all factual allegations in the light most favorable to the non-moving party to determine if there exists a plausible claim upon which relief may be granted". *Tomasella v. Nestle USA, Inc.,* 962 F.3d 60, 70 (1st Cir. 2020).

"A judge must accept as true all of the factual allegations contained in the complaint." *Erickson v. Pardus,* 551 U.S. 89, 94 (2007).

---

[1] As it were, internet searches indicate that millions of vaccinated persons have contacted the disease, and some have even died as a result.

The Court's function on a motion to dismiss is "not to weigh the evidence that might be presented at a trial but merely to determine whether the complaint itself is legally sufficient." *Goldman v. Belden*, 754 F.2d 1059, 1067 (2d Cir. 1985).

"A complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, ibid." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). Furthermore, Federal Rule of Civil Procedure 8(a)(2) requires only "a short and plain statement of the claim showing that the pleader is entitled to relief," in order to "give the defendant fair notice of what the . . . claim is and the grounds upon which it rests," Conley v. Gibson, 355 U.S. 41, 47, 78 S. Ct. 99 *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007).

"As a general rule, a court freely grants leave to amend a complaint that has been dismissed. Fed. R. Civ. P. 15(a); *Schreiber Distrib. Co. v. Serv-Well Furniture Co.*, 806 F.2d 1393, 1401 (9th Cir. 1986)." *Forbes v. Cnty. of San Diego*, Case No. 20-cv-00998-BAS-JLB, 4 (S.D. Cal. Mar. 4, 2021).

## ARGUMENT

**A.    Defendant is a State Actor for Purposes of this Action and Plaintiff Can Bring Claims under the United States Constitution and the Massachusetts Declaration of Rights.**

In the *Defendant's Memorandum of Law in Support of its Motion to Dismiss the Second Complaint* at Page 1, the Defendant asserts that the "Plaintiff cannot maintain a claim against Ipsen for violations of the United States Constitution or the Massachusetts Declaration of Rights as Ipsen is a private entity, not a state actor". *Id*. The facts of this case and jurisprudence demonstrate that Defendant's claims lack merit and therefore, the arguments in its *Memorandum* are inapposite.

3

The Plaintiff is not making freestanding constitutional claims against private entities but is making constitutional claims against her employ

er, who is a state actor.

The crux of this action is based on the Defendant's policy mandating she get injected with the COVID-19 vaccine. The Defendant did not originate this mandate but was **ordered** to create the policy per a mandate of the Federal Government. Thus, Defendant was carrying out a policy that originated from the Executive Branch of the Federal Government and which they were mandated to enforce.

Moreover, whether or not an entity is properly considered a state actor pursuant to Supreme Court precedent is factually dependent. Therefore, Defendant's Motion must be rejected, until the parties have had an opportunity to engage in discovery.

Under the doctrine of state action, courts may, under certain circumstances, treat "the deed of an ostensibly private organization or individual" as if it were performed by the Federal government or a state government. *Brentwood Acad. v. Tennessee Secondary Sch. Athletic Ass'n*, 531 U.S. 288, 295 (2001). "State action may be found if, … there is such a 'close nexus between the State and the challenged action' that seemingly private behavior 'may be fairly treated as that of the State itself.'" *Id.* (citing *Jackson v. Metropolitan Edison Co.*, 419 U.S. 345, 351 (1974)). State action may also be found under the public function test or the state compulsion test. *Harvey v. Harvey*, 949 F.2d 1127, 1130 (11th Cir. 1992). Under any and all of these tests, Defendant is, and was, a state actor for purposes of constitutional torts. "[T]he public function test shows state action only when private actors are given powers (or perform functions) that are traditionally the exclusive prerogative of the State." *Id.* at 1131 (quotation marks omitted).

State action may exist when the government "has exercised coercive power or has

4

provided such significant encouragement, either overt or covert, that the choice must in law be deemed to be that of the State." *Blum v. Yaretsky*, 457 U.S. 991, 1004 (1982). Private entities and individuals may be state actors when they act as "a willful participant in joint activity with the State or its agents," *Lugar v. Edmondson Oil Co.*, 457 U.S. 922, 941 (1982) (quoting *United States v. Price*, 383 U.S. 787, 794 (1966)) (internal quotation marks omitted). Private entities and individuals may also be state actors when they "[have] been delegated a public function by the state." *Brentwood Acad.*, 531 U.S. at 296 (citations omitted). Additionally, "[c]onduct that is formally 'private' may become so entwined with governmental policies or so impregnated with a governmental character as to become subject to the constitutional limitations placed upon state action." *Evans v. Newton*, 382 U.S. 296, 299 (1966).

The United States Congress did not pass a statute requiring citizens to receive COVID-19 vaccines for the simple reasons that it lacked both the political will and the constitutional authority. Nonetheless, the Executive branch of the Federal government coerced Defendant into implementing its vaccine mandate. Exec. Order No. 14042 expressed the desire of the President and the Executive branch to require citizens to be vaccinated while, at the same time, acknowledging that neither they, nor Congress, had the authority to mandate this medical procedure. The Federal government attempted to implement a broad-reaching vaccine mandate under its authority to regulate occupational health and safety. However, the Fifth Circuit Court of Appeals issued a decision that declared that the Federal Government lacked authority under the Occupational Safety and Health Act. *BST Holdings, L.L.C. v. Occupational Safety & Health Admin., United States Dep't of Labor,* 17 F.4th 604, 617 (5th Cir. 2021); 29 U.S.C. § 651 *et seq.* This view was affirmed by the Supreme Court before Exec. Order 14042 became effective. *Nat'l Fed'n of Indep. Bus. v. Dep't of Lab., Occupational Safety & Health Admin.,* 142 S. Ct. 661,

665–66 (2022).

Instead of complying with the limitations imposed by the United States Constitution, the President and the Executive branch of the United States government attempted a work-around; it created a "sword of Damocles" for a large sector of the citizenry: Either get vaccinated or suffer the extreme financial consequences of losing your job. As a result, it voluntarily and intentionally decided to lead the way and impose a vaccine mandate in an attempt to garner the support and favor of the Executive branch of the United States government, from whom it derives substantial funding.

Defendant receives so much of its funding from the Federal government, it is completely beholden to the Federal government. Defendant's conduct was so entwined with governmental policies or so impregnated with a governmental character as to become subject to the constitutional limitations placed upon governmental action. Defendant was a willful participant in joint activity with the Federal government, in that it deliberately aided the Federal government in its efforts to influence Americans to receive COVID-19 vaccination by threatening their employment. *See*, Exec. Order No. 14043, 86 Fed. Reg. 50989 (Executive order mandating vaccination for federal employees, issued simultaneously to Exec. Order No. 14042).

**B.    Plaintiff's Title VII Claim is Not Time Barred Because it Relates Back to the Original Complaint.**

In *Defendant's Memorandum of Law in Support of its Motion to Dismiss the Second Complaint* at Pages 6 and 7, the Defendants ask the Court to dismiss Plaintiff's Title VII claim because they allege it is untimely, since "Plaintiff received her Right to Sue Letter on August 30, 2022. This means that Plaintiff had until November 28, 2022, to file a Title VII religious discrimination claim against Ipsen. However, Plaintiff did not bring her Title VII cause of action until April 24, 2023- five months *after* the deadline". *Id.*

To begin, the original Complaint and the First Amended Complaint concern one issue: Defendant made an order that all their employees were mandated to take a COVID-19 vaccination; Plaintiff claimed a religious exemption to taking the vaccine; the Defendant summarily denied the exemption in violation of the constitutions and laws, and the Defendant fired Plaintiff for refusing to take the vaccine. Consequently, the state law torts in the original Complaint, First Amended Complaint and the Title VII claims in the Second Amended Complaint arise out of the same set of facts.

Second, this action commenced in the Massachusetts courts and is only before this Court because Defendant removed it from the Commonwealth courts. The Commonwealth's rules pertaining to the amending of complaints ought to apply. When a claim arises under Massachusetts law, the Commonwealth's relation-back rules control rather than the Federal rules. *Ward v. Hercules*, 75 F.R.D. 455 (D.Mass. 1977).

Rule 15(c) of the Massachusetts Rules of Civil Procedure states:
> Whenever the claim or defense asserted in the amended pleading arose out of the conduct, transaction, or occurrence set forth or attempted to be set forth in the original pleading, the amendment (including an amendment changing a party) relates back to the original pleading.

The plain language of Rule 15(c) states that amendments relate back to the original complaint whenever they "arose out of the conduct, transaction or occurrence" that was set forth in the original complaint. Without question, the Second Amended Complaint refers to the same conduct and issues, being fired for refusal to take the vaccine, as did the original complaint. Only the theories for relief were changed in the Second Amended Complaint. Consequently, the Defendant had timely notice and suffered no prejudice.

Third, jurisprudence supports Plaintiff's position relative to interpretation of relation-back amendments to an original Complaint. *See, e.g. Abernathy v. Dewey*, 196 F.Supp.3d 157, 165-166 (D.Mass. 2016) (granting permission to add new claim after statute of limitations expired because new claim arose out of same conduct, transaction or occurrence stated in original complaint); *One Beacon Ins. Co. v. Electrolux*, 223 FRD 21, 25 (D.Mass. 2004) (allowing amendment under relation-back rule where claims arose out of occurrence that was subject matter of original claim, defendants had notice of claims well before expiration of limitations period, and defendants were not prejudiced); *NES Rentals v. Maine Drilling & Blasting, Inc.* 92 N.E.2d 291, 294-295 (Mass. 2013) (allowing a timely filed complaint to be amended to add a new claim even though statutory 90-day period for adding new claim had expired because it related back); *Bengar v. Clark Equipment Co.* 24 Mass.App.Ct 41, 46 (Mass. 1987) ("Fact that new action would be barred by statute of limitations is reason to permit amendment, and relation back of action to date of original complaint"); *Cimino v. Milford Keg, Inc.* 385 Mass. 323, 333 (Mass. 1982) (allowing new cause of action in amended complaint after statute of limitations had run because new cause of action arose out of same underlying transaction as stated in original complaint).

Indubitably, the original Complaint claimed that Plaintiff was wrongfully fired for refusing to be injected with the COVID-19 vaccine and sought relief from the Defendant. The Second Amended Complaint makes the same exact claim based on the same exact facts and asks for the same exact relief. Under the rules of civil procedure and jurisprudence, the Second Amended Complaint relates back to the original complaint regardless of the status of the original Complaint.

**C.**     **The Defendant Violated M.G.L. c. 151B**

Finally, in the *Defendant's Memorandum of Law in Support of its Motion to Dismiss the Second Complaint* at Pages 7 and 8, Defendant asserts that Plaintiff "does not articulate any specific religious belief, observance, or practice that conflict with Ipsen's vaccination requirement" and therefore, "the M.G.L. c.151B religious discrimination claim must be dismissed". *Id.*

Title 42 USC § 2000e-2 (a)(1) states in part that its unlawful for an employer to "discharge any individual ... because of such individual's ... religion." Chapter 151B of MGL makes it unlawful for an employer to discharge an employee because of a "religious creed". *Id.* 1. It is also unlawful for an employer to condition a person's continued employment by forcing such employee to "violate or forego the practice of her creed or religion as required by that creed or religion". *Id.* 1A. Moreover, the Constitution forbids the Government from interfering in a person's free exercise of their religion; in this case, the mandatory vaccination policy handed down from the Government to its agents, the Defendant, that was in contradiction of Plaintiff's religious practice.

The statutes in question protect an employee from being discharged because of their religious beliefs. Defendant keeps attempting to distinguish between the mandatory vaccination policy and Plaintiff's sincerely held religious beliefs, arguing, in effect, that Plaintiff's religious beliefs had nothing to do with her discharge, but her refusal to take the vaccine is what resulted in her discharge. This is incorrect. Plaintiff did not take the vaccine because her religion forbade her to take vaccines. It is Plaintiff's religious beliefs that led to her discharge, not her refusal to take the vaccination. Her religious beliefs were not, and are not, bogus. The religious beliefs and refusal to be vaccinated are thus intricately entwined in this case and cannot be separated. Had

9

not Plaintiff been compelled by her religious beliefs to refuse the vaccination then this case would not be before the bar.

In further arguing, Defendant's claim that Plaintiff "does not articulate any specific religious belief, observance, or practice that conflict with Ipsen's vaccination requirement" is unfounded and in fact, the opposite is true. Defendant was well aware of the Plaintiff's specific sincerely held religious beliefs. Plaintiff notified the Defendant of her sincerely held religious beliefs in her October 26, 2021 letter requesting a religious exemption, attached hereto as **"Exhibit A"**, as well as her follow-up letter, attached hereto as **"Exhibit B"** requesting accommodations after her exemption request was wrongfully denied. Based on this, Defendant's assertion that the M.G.L. c.151B cannot be substantiated is erroneous and as a result, the claim must stand.

WHEREFORE, based on the foregoing, Plaintiff submits that she has sufficiently met the threshold showing genuine issues of fact and that her termination was motivated by retaliatory animus.

## CONCLUSION

WHEREFORE, in the interests of justice, and based upon the above reasons, the Plaintiff respectfully submits that the Defendant's Motion to Dismiss the Second Amended Complaint must be denied.

## LOCAL RULE 7.1 CERTIFICATION

Pursuant to Local Rule 7.1(a)(2), the undersigned counsel hereby certifies that counsel for the Plaintiff has conferred with counsel for the Defendant and attempted in good faith to resolve or narrow the issues presented in this motion.

## REQUEST FOR ORAL ARGUMENT

Pursuant to Local Rule 7.1(d), Plaintiff believes that oral argument may assist this Honorable Court in deciding this motion and thus request oral argument.

                                                  Respectfully submitted,
                                                  The Plaintiff,
                                                  Regina M. Thornton,
                                                  By her attorneys,

DATED: June 28, 2023

                                                  */s/ Richard C. Chambers, Jr., Esq.*
                                                  Richard C. Chambers, Jr., Esq.
                                                  BBO#: 651251
                                                  Chambers Law Office
                                                  220 Broadway, Suite 404
                                                  Lynnfield, MA 01940
                                                  Office: (781) 581-2031
                                                  Cell: (781) 363-1773
                                                  Fax: (781) 581-8449
                                                  Email: Richard@chamberslawoffice.com

DATED: June 28, 2023

                                                  */s/ Joseph Spinale., Esq.*
                                                  Joseph Spinale, Esq.
                                                  BBO#: 548547
                                                  Chambers Law Office
                                                  220 Broadway, Suite 404
                                                  Lynnfield, MA 01940
                                                  Office: (781) 581-2031
                                                  Cell: (781) 838-1411
                                                  Fax: (781) 581-8449
                                                  Email: Joe@chamberslawoffice.com

## CERTIFICATE OF SERVICE

I hereby certify that this document was filed through the ECF system and will therefore be sent electronically to the registered participants as identified on the Notice of Electric Filing (NEF) and paper copies will be sent this day to those participants indicated as non-registered participants.

DATED: June 28, 2023

/s/ *Richard C. Chambers, Jr., Esq.*
Richard C. Chambers, Jr., Esq.