UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| REGINA M. THORNTON,<br><br>                    Plaintiff,<br><br>vs.<br><br>IPSEN BIOPHARMACEUTICALS, INC.,<br><br>                    Defendant. | Civil Action No. 1:23-cv-11171<br><br>**LEAVE TO FILE REPLY GRANTED ON JULY 18, 2023** |

**DEFENDANT'S REPLY IN SUPPORT OF IT'S**
**MOTION TO DISMISS THE SECOND AMENDED COMPLAINT**

**I.      PRELIMINARY STATEMENT**

Plaintiff Regina M. Thornton ("Plaintiff" or "Thornton") is a COVID-19 denier who refers in her Opposition to the "so-called COVID-19 pandemic" and asserts that "being vaccinated has virtually no effect on preventing the spread of COVID-19." Opp. 2.[1] Plaintiff's glib characterization and faulty assertion speaks volumes about the real reason for her refusal to comply with Defendant Ipsen Biopharmaceuticals, Inc.'s ("Ipsen") vaccination requirement. This reveal renders her claims of religious discrimination particularly hollow. Moreover, Plaintiff's legal arguments cannot withstand the barest of scrutiny. Regardless of whether Plaintiff believes Ipsen's employee vaccination requirement is wise corporate or health policy,

---

[1] This Court can take judicial notice of (1) the U.S. Centers for Disease Control and Prevention pronouncement that vaccination lowers the likelihood of spreading COVID-19. Specifically, "[s]taying up to date with COVID-19 vaccination . . . means you are less likely to spread the disease to others and increases your protection against new variants of SARS-CoV-2, the virus that causes COVID-19." Frequently Asked Questions about COVID-19 Vaccination, "Why should I get vaccinated if I might get COVID-19 anyway?", https://www.cdc.gov/coronavirus/2019-ncov/vaccines/faq.html#:~:text=People%20who%20have%20received%20the,Everyone%206%20years%20and%20older (last visited July 25, 2023). And (2) The World Health Organization's Coronavirus Dashboard statistics of over 100 million confirmed cases in the United States, causing over 1.1 million deaths. World Health Organization, Coronavirus (COVID-19) Dashboard: United States of America, https://covid19.who.int/region/amro/country/us (last visited July 25, 2023).

1

Ipsen has the legal right to establish the terms and conditions of employment, including a vaccination mandate to protect fellow employees and visitors. The U.S. Equal Employment Opportunity Commission has stated that federal equal employment opportunity laws "do not prevent an employer from requiring all employees to be vaccinated against COVID-19[.]"[2] Not surprisingly, courts have consistently upheld the legality of employer COVID-19 vaccine mandates. *See e.g. Together Emps. v. Mass Gen. Brigham Inc.*, 32 F.4th 82, 87 (1st Cir. 2022) (explaining that a COVID-19 employee vaccination requirement does not require employees "to perform or abstain from any action that violates their religious beliefs"); *Bridges v. Houston Methodist Hosp.*, 543 F. Supp. 3d 525, 528 (S.D. Tex. 2021), *aff'd sub nom. Bridges v. Methodist Hosp.*, No. 21-20311, 2022 WL 2116213 (5th Cir. June 13, 2022) (explaining that a COVID-19 vaccination mandate is not unlawful coercion: "[Plaintiff] can freely choose to accept or refuse a COVID-19 vaccine; however, if she refuses, she will simply need to work somewhere else").

Accordingly, Ipsen's vaccination requirement is lawful on its face and as applied to the Plaintiff, as discussed more fully herein, and none of Plaintiff's arguments to the contrary can make a dent in that.

## II. IPSEN IS NOT A STATE ACTOR SUBJECT TO CLAIMS UNDER THE U.S. CONSTITUTION

Plaintiff relies on two theories to try to magically transform Ipsen from a private entity into a state actor subject to claims under the U.S. Constitution. Both attempts fail.[3] First, Plaintiff argues that Ipsen was acting as an agent of the Federal Government because it was

---

[2] *See generally* EEOC's Guidance, What You Should Know About COVID-19 and the ADA, the Rehabilitation Act, and Other EEO Laws, Section K.1, https://www.eeoc.gov/wysk/what-you-should-know-about-covid-19-and-ada-rehabilitation-act-and-other-eeo-laws#K (last visited July 25, 2023).

[3] For the same reasons detailed in this section, Ipsen would also not be a state actor subject to claims under the Massachusetts Declaration of Rights. Additionally, as detailed previously in Defendant's Memorandum In Support of Its Motion to Dismiss, a plaintiff cannot bring a private cause of action under the Massachusetts Declaration of Rights.

"ordered" to create its vaccination policy pursuant to President Biden's Executive Order No. 14042 ("EO 14042"), which sought to require employees of certain federal contractors to be vaccinated against COVID-19 during performance of the contract work. Importantly, President Biden issued EO 14042 on September 9, 2021, two days *after* Ipsen's Employee Vaccination Policy became effective on September 7, 2021. *See* ECF No. 7 Ex. A. Further, Ipsen was never "mandated to enforce" the vaccination policy, as EO 14042 was never enforced by the Federal Government. Indeed, EO 14042 was enjoined nationwide before it took effect. *Georgia v. Biden*, 574 F. Supp. 3d 1337 (S.D. Ga. 2021). And even after the Eleventh Circuit narrowed the injunction, *Georgia v. President of the United States*, 46 F.4th 1283 (11th Cir. 2022), the Biden Administration issued a statement saying it would not enforce the federal contractor vaccination mandate. Eventually, on May 9, 2023, President Biden issued Executive Order No. 14099, officially revoking EO 14042. At no time did the Federal Government ever enforce the federal contractor employee vaccination requirements. In sum, Ipsen was never coerced or compelled by the White House to implement its vaccination policy.[4]

Alternatively, Plaintiff claims that Ipsen is so "entwined" with government policies that it is effectively a state actor. Plaintiff predicates this entwinement theory of state action purely on the fact that Ipsen contracts with the Federal Government and receives government grant money. No court has ever endorsed Plaintiff's overbroad theory of state action. In fact, courts in the First Circuit consistently hold that a private company "cannot be transformed into a state actor simply because it is paid with government funds[.]" *Santiago v. Puerto Rico*, 655 F.3d 61, 72

---

[4] Plaintiff also cites to Executive Order No. 14043 ('EO 14043"), which sought to require that all federal employees get vaccinated for COVID-19. Ipsen was never subject to EO 14043, and the promulgation of EO 14043 had absolutely no effect on Ipsen's corporate policies. In addition, EO 14043, like the federal contractor mandate, was issued after Ipsen's vaccination policy was announced, and the federal employee mandate was revoked by President Biden before it ever took effect.

(1st Cir. 2011) (holding that a private bus company was not a state actor despite its exclusive contract to provide students transportation to and from public schools); *see e.g.*, *Rockwell v. Cape Cod Hosp.*, 26 F.3d 254, 258 (1st Cir. 1994) ("[T]he receipt of federal funds, such as Medicare [and] Medicaid . . . are insufficient to establish that a hospital or other entity acted under color of state law"); *Sherkat v. New England Vill., Inc.*, No. 15-CV-11074-IT, 2015 WL 8215983, at *5 (D. Mass. Dec. 8, 2015), aff'd, 691 F. App'x 644 (1st Cir. 2016) (finding that a private residential care facility for individuals with intellectual disabilities was not a state actor despite receiving over 90% of its revenue from the Massachusetts Department of Developmental Services).

Simply put, Plaintiff has not pled any facts that would establish that Ipsen is anything other than a private entity.

### III.  PLAINTIFF FAILS TO ESTABLISH A SINCERELY-HELD RELIGIOUS BELIEF

Plaintiff seeks to remedy her insufficient pleading in the Second Amended Complaint by attaching two exhibits to her Opposition seeking to come within the religious exemption contained in Ipsen's vaccination policy. In Exhibit A (Thornton's initial request for a religious exemption to Ipsen's vaccination requirement) and Exhibit B (Thornton's follow-up self-styled attempt at an appeal), Plaintiff explains the purported religious nature of her objection to

complying with Ipsen's vaccination requirement.  However, Plaintiff's stated *personal* beliefs do not constitute a protected *religious* belief under either M.G.L. c. 151B or Title VII.[5]

In Plaintiff's initial exemption request letter to Ipsen dated October 26, 2021, Plaintiff includes a full page of text but can muster only the conclusory statement that "receiving a vaccine goes against my personal, private and sincerely-held religious beliefs" with the only specific belief articulated as "my awareness that what God has created is perfect." Opp. Ex. A. In this letter, Thornton does not provide any information to suggest that getting vaccinated is against a tenet of her religion.[6]  Additionally, Thornton's self-styled, follow-up appeal letter contains no new substantive information about how her personal belief is religious in nature or where it was derived in the teachings of her religion.  Instead, it merely reiterates that "my faith . . . requires me to keep my body and soul pure to God's standards" and "it would . . . jeopardize my soul and eternal salvation to go against God by defiling my perfectly created body that He created in His image by receiving the vaccine." Opp. Ex. B.

In order to sufficiently plead a religious discrimination claim under either M.G.L. c. 151B or Title VII, a plaintiff must assert that "a *bona fide* religious practice conflicts with an

---

[5] Despite failing to file a Title VII claim within the 90-day window, Plaintiff argues that her Title VII claim is timely because it "relates back" to the original Complaint.  This argument is unpersuasive.  On March 2, 2023, Ipsen was initially served with a complaint titled "Amended Complaint And Demand For Jury Trial," dated February 20, 2023.  This complaint did not include a Title VII claim, ostensibly because the deadline to file such a claim expired on November 28, 2022.  Although a review of the Massachusetts Superior Court docket reveals that Thornton had previously filed a document titled "Complaint And Demand For Jury Trial" on November 22, 2022, that original Complaint (which did not contain a Title VII claim) was never served on Ipsen.  This court should not allow the Second Amended Complaint to relate back to a pleading for which Ipsen had no notice.  Further, Plaintiff argues that Massachusetts' relation back rule "ought to apply," without citing any authority establishing that it does.  In fact, Plaintiff has not cited to any case where an untimely filed Title VII claim was found to relate back to an original complaint which was never served on the defendant.  Accordingly, Thornton's Title VII claim is time-barred.  Regardless, as detailed in this section, Plaintiff's Title VII claim fails on the merits as well.

[6] Although not explicitly stated, Plaintiff's references to the "Holy Bible" and the "Holy Spirit" suggest that she is a Christian.  Virtually all Christian denominations have no theological opposition to vaccines, including Amish, Anglican, Baptist, Catholic, Eastern Orthodox, Jehovah's Witnesses, Mennonites, Mormon, Pentecostal Christians, Quakers, Seventh-day Adventist, and Unitarian-Universalist.  *See* Mark E. Wojcik, "Sincerely Held or Suddenly Held Religious Exemptions to Vaccination?", 47 Hum. Rts. 20, 2022, at 20 (referencing research conducted by Vanderbilt University, https://www.vumc.org/health-wellness/news-resource-articles/immunizations-and-religion).

employment requirement[.]" *Brox v. Woods Hole, Martha's Vineyard & Nantucket S.S. Auth.*, 590 F. Supp. 3d 359, 366 (D. Mass. 2022). In contrast, objection to vaccination based on an "idiosyncratic ***personal*** belief" is insufficient. *Id.* at 366 n. 7 (emphasis added). In the seminal case of *Fallon v. Mercy Catholic Medical Center*, 877 F. 3d 487 (3d Cir. 2017), the U.S. Third Circuit Court of Appeals identified three criteria to determine which beliefs count as sufficiently "religious:"

> First, a religion addresses fundamental and ultimate questions having to do with deep and imponderable matters. Second, a religion is comprehensive in nature; ***it consists of a belief-system as opposed to an isolated teaching***. Third, a religion often can be recognized by the presence of certain formal and external signs.

*Id.* at 491 (emphasis added). This definition is consistent with the EEOC's position that religious beliefs typically concern "ultimate ideas about life, purpose, and death." EEOC Compliance Manual, Section 12-I.A.1, 2008 WL 3862103.

In vaccination cases, courts faced with the same articulated "belief" as Plaintiff's, mainly that "what God has created is perfect" and one should "keep [their] body and soul pure to God's standards," have consistently held that such a conviction is ***not a bona fide religious belief*** but instead merely a "personal belief" or "isolated teaching." *See e.g., Brox*, 590 F. Supp. 3d at 366 n. 7 (Federal District Court of Massachusetts denies employee's motion for injunctive relief regarding employer's mandatory COVID-19 vaccination policy where employees' reasons for opposing vaccination—*e.g.,* "Jesus tells me that it is unwise to put the COVID vaccine in my body, his creation" and "natural & ancient remedies are what God intended me to use, to prevent and help cure illness"—"have no grounding in religious practice but are rather expressions of idiosyncratic personal belief"); *Fallon*, 877 F. 3d at 492 (Employee's objection to flu vaccine did not qualify as a religious belief protected by Title VII because his belief that "one should not harm their body and that the flu vaccine may do more harm than good" are not religious beliefs);

*Potter v. St. Joseph's Med. Ctr*, No. A18-0736, 2018 WL 6729836 (Minn. Ct. App. Dec. 24, 2018) (Court held that employee's proffered beliefs for refusing vaccination were not sincerely-held religious beliefs where plaintiff was unable to cite to any specific Bible passages that formed the basis of her belief that she must be "blemish free" and that "blood shall be kept pure and free from contaminates."  Instead, this belief was "not really a church teaching" but rather her "own faith, person[al] faith belief"); *Mason v. General Brown Cent. School Dist.*, 851 F. 2d 47, 51 (2d Cir. 1988) (Rejecting parents' claim of religious-based objection to vaccinations, where they believed that "the human body possessed means of healing itself without medical intervention" and that "immunizations are unnecessary and indeed contrary to the 'genetic blueprint' intended by nature."  The court ruled that the parents' belief simply embodied secular ethics); *see also Geerlings v. Tredy Frin/Eastown School District*, No. 21-CV-4024, 2021WL 4399672, at *7 (E.D. Pa. Sept. 27, 2021) (In a challenge to mandatory mask wearing in schools to mitigate spread of COVID-19, the court opined that the belief that "the body is a temple and should not be harmed" is a medical or healthy living practice, not a religious practice).

Notably, in the context of purported religious objections to employer COVID-19 safety protocols, federal district courts have recently and routinely disposed of these suits at the motion to dismiss stage.  In *Ulrich v. Lancaster Gen. Health*, No. CV 22-4945, 2023 WL 2939585 (E.D. Pa. Apr. 13, 2023), a registered nurse and practicing Christian refused to comply with her employer's COVID testing regimen, citing her belief that "my body is a temple of the Holy Spirit" and that she has a "God-given liberty to choose what I allow to enter my body and subject my body to."  *Id*. at *2.  The court dismissed her Title VII and state law discrimination claims, ruling that her opposition to COVID testing was not based on a bona fide religious belief.  The court emphasized that accepting such a "self-defining approach" to religion would amount to "a

7

blanket privilege where [the employee] alone is the arbiter for decisions which she expects her employer to unfailing respect." *Id.* at *5 (quotation marks omitted). *See also Lawhead v. Brookwood Mgmt. Co.*, No. 5:22-cv-00886, 2023 WL 2691718, at *4 (N.D. Ohio Mar. 29, 2023) (dismissing Title VII claim because plaintiff's opposition to vaccines "sound in medical and political concerns" not religious beliefs); *Passarella v. Aspirus, Inc.*, No. 22-CV-287-JDP, 2023 WL 2455681, at *6 (W.D. Wis. Mar. 10, 2023) (noting that a Title VII plaintiff needs to do more than couch their request for vaccination exemption in religious terms; "the use of religious vocabulary does not elevate a personal medical judgment to a matter of protected religion"); *Finkbeiner v. Geisinger Clinic*, 623 F. Supp. 3d 458, 465 (M.D. Pa. 2022) ("Simply put, [Plaintiff's] statement—which centers on her free will and belief that Covid-19 vaccines and tests are harmful and unnecessary—fails to establish sincere religious opposition[.]").

Similarly, Thornton is alleging "a divinely granted right to pick and choose" which Ipsen policies she wants to follow. *Ulrich*, 2023 WL 2939585 at *4. Because Thornton has not, and cannot, articulate how her objection to vaccination is related to a comprehensive religious belief-system, this court must dismiss her religious discrimination claims. "Certainly, discovery is not needed to develop the issue of [Plaintiff's] own thoughts and beliefs." *Id.* at *6 (dismissing Title VII and state law religious discrimination claims where plaintiff's concerns regarding COVID-19 safety procedures were not religious in nature); *Winans v. Cox Auto., Inc.*, No. CV 22-3826, 2023 WL 2975872, at *4 (E.D. Pa. Apr. 17, 2023) (same).[7]

---

[7] In the alternative, because Plaintiff's description of her purported religious belief was not included in the actual pleadings, it would be proper for this court to rule on this motion using the motion for summary judgement standard. Fed. R. Civ. P. 12(d) ("If, on a motion under Rule 12(b)(6) . . . , matters outside the pleadings are presented to and not excluded by the court, the motion must be treated as one for summary judgment under Rule 56."); *see Trans-Spec Truck Serv., Inc. v. Caterpillar Inc.*, 524 F.3d 315, 321 (1st Cir. 2008).

**IV.     PLAINTIFF'S REQUEST FOR A RELIGIOUS EXEMPTION WOULD CREATE AN UNDUE HARDSHIP**

Plaintiff's religious discrimination claims should also be dismissed on the grounds that providing Thornton an exemption to the vaccination requirement based on her claim that her body is perfect and should remain so would have posed an "undue hardship" for Ipsen. Granting Plaintiff's request would have compromised Ipsen's efforts to control the spread of COVID-19 and provide a safe working environment for employees and visitors, would have thwarted the Company's efforts to return employees to the office, and would have undermined its reputation as a steward of improving health outcomes given its mission of creating transformative medicines in oncology, rare disease and neuroscience. Ipsen's stated objective in implementing its mandatory Vaccination Policy is "to protect the health and well-being of employees and their families" as well as visitors to Ipsen's premises. *See* ECF No. 7 Ex. A. To grant an exemption based on Thornton's "perfectly-created body" belief would also open the floodgates to anyone who did not want to comply with the vaccination requirement and thereby jeopardize safety. It is well-established that an employee's religious belief must yield to an increased safety risk in the workplace. *See e.g., Robinson v. Children's Hosp. Bos.*, No. CV 14-10263-DJC, 2016 WL 1337255, at *10 (D. Mass. Apr. 5, 2016) (Massachusetts federal court ruled that the employee's request for a religious exemption to the employer's requirement of mandatory influenza vaccination would create an increased safety risk which was an undue hardship on the employer and therefore it was not obligated to accommodate the employee's sincerely-held religious belief). Consequently, even assuming *arguendo* that Thornton could establish that her belief is a religious practice, accommodating that practice would be an undue hardship as it would result in substantial increased costs to Ipsen by compromising health and safety and undermining Ipsen's reputation as a steward of improving health outcomes. *Groff v. DeJoy*, 143 S. Ct. 2279, 2281

(2023); *see Lowe v. Mills*, 68 F.4th 706, 721 (1st Cir. 2023) (First Circuit affirmed district court's ruling disposing of healthcare workers' Title VII religious discrimination claim at the motion to dismiss stage because granting the employees' request for exemption from COVID-19 vaccination requirement would have constituted an undue hardship for the employer).

## V. CONCLUSION

This is now Plaintiff's third bite at the apple. For the foregoing reasons, the Second Amended Complaint should be dismissed with prejudice.

Respectfully submitted,

IPSEN BIOPHARMACEUTICALS, INC.

By its attorney,

/s/ Jonathan Rosenfeld
Jonathan Rosenfeld (BBO No. 556172)
WILMER CUTLER PICKERING HALE
AND DORR LLP
60 State Street
Boston, Massachusetts 02109
Telephone: (617) 526-6000
jonathan.rosenfeld@wilmerhale.com

Dated: July 26, 2023

## CERTIFICATE OF SERVICE

I, Jonathan Rosenfeld, hereby certify that on this 26th day of July 2023, I served a true copy of the foregoing document upon the attorney of record for each other party through the ECF filing system astrictive.

/s/ Jonathan Rosenfeld
Jonathan Rosenfeld