UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| REGINA M. THORNTON, | ) )  ) |
| Plaintiff, | ) ) |
| v. | )  Civil Action No. 23-11171-JCB ) |
| IPSEN BIOPHARMACEUTICALS, INC., | ) ) |
| Defendant. | ) ) |

ORDER ON DEFENDANT'S MOTION TO DISMISS
[Docket No. 6]

October 26, 2023

Boal, M.J.

In this action, plaintiff Regina M. Thornton has brought claims against her former employer Ipsen Biopharmaceuticals, Inc. ("Ipsen") in connection with her termination for failure to comply with Ipsen's COVID-19 vaccination policy. Ipsen has moved to dismiss the second amended complaint ("SAC") pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure. Docket No. 6.[1] For the following reasons, this Court grants the motion.

I.   PROCEDURAL BACKGROUND

On November 22, 2022, Thornton filed her original complaint against Ipsen in Middlesex Superior Court. See Docket No. 17 at 1, 5-11. On February 21, 2023, Thornton filed an amended complaint. Id. at 2, 23-29. On May 2, 2023, Thornton filed a second amended complaint. Id. at 3, 39-45. Ipsen removed the case to this Court on May 25, 2023. Docket No.

---

[1] On June 28, 2023, the parties consented to the jurisdiction of a U.S. magistrate judge for all purposes. Docket No. 11.

1

1.[2]

On June 1, 2023, Ipsen filed the instant motion to dismiss. Docket No. 6. On June 28, 2023, Thornton filed her opposition to the motion to dismiss. Docket No. 12. Ipsen filed a reply on July 26, 2023. Docket No. 16. This Court heard oral argument on October 24, 2023.

II.   FACTUAL BACKGROUND

    A.   Scope Of The Record

Both parties have relied on documents not attached to the complaint. See Docket No. 7-1; Docket No. 12 at 5; Docket No. 12-1; Docket No. 23. "In ruling on a motion to dismiss for failure to state a claim, 'a court ordinarily may only consider facts alleged in the complaint and exhibits attached thereto, or else convert the motion into one for summary judgment.'" Douglas v. Hirshon, 63 F.4th 49, 57 (1st Cir. 2023) (citing Freeman v. Town of Hudson, 714 F.3d 29, 35-36 (1st Cir. 2013)). "Under certain 'narrow exceptions,' including for 'documents the authenticity of which are not disputed by the parties,' and 'official public records' -- 'some extrinsic documents may be considered without converting a motion to dismiss into a motion for summary judgment." Id.

Ipsen has attached a copy of its COVID-19 vaccination policy to its memorandum of law. Docket No. 7-1. This Court may properly consider this document because Thornton has referred to it in her complaint (SAC at ¶¶ 4, 5), has not disputed its authenticity, and it is central to her claims. See Watterson v. Page, 987 F.2d 1, 3 (1st Cir. 1993). Similarly, this Court may consider the October 26, 2021 letter attached to Thornton's opposition and the November 5, 2021 letter

---

[2] On July 26, 2023, this Court issued an order to show cause why the case should not be remanded to state court for Ipsen's failure to file a copy of the state court record pursuant to Local Rule 81.1. On July 26, 2023, Ipsen filed a copy of the state record and on July 27, 2023, it filed a response to the show cause order. Docket Nos. 17, 18. After review of Ipsen's response, this Court declines to remand the case to state court.

filed after the hearing on this matter.  Docket No. 12-1; Docket No. 23.  These letters were also sufficiently referred to in her complaint.  See SAC at ¶¶ 6-8.

Finally, the parties refer to certain executive orders issued by President Biden.  See Docket No. 12 at 5; Docket No. 16 at 3.  This Court may take judicial notice of such orders.  See, e.g., Michael Cetta, Inc. v. Admiral Indem. Co., 506 F.Supp.3d 168, 173 (S.D.N.Y. 2020) (taking judicial notice of executive orders as public documents or matters of public record).

B.     Facts[3]

Thornton was employed as Associate Director – Patient Safety for Ipsen from April 29, 2019 to November 10, 2021.  SAC ¶¶ 3, 9.  Ipsen implemented a COVID-19 Vaccination Policy effective September 7, 2021 (the "Vaccination Policy").  Id. at ¶ 4; Docket No. 7-1.  Pursuant to the Vaccination Policy, all employees were required to be fully vaccinated for COVID-19 no later than November 1, 2021.  Docket No. 7-1 at 2.[4]  Any employee who failed to provide timely proof of vaccination was "subject to termination for Cause."  Id. at 4.

The Vaccination Policy provides a procedure for employees to request religious or medical exemptions to the vaccination requirement.  Id. at 3; SAC ¶ 5.  Specifically, employees seeking to request an exemption from the vaccination requirement due to a sincerely held religious belief must complete and submit the applicable accommodation request form provided

---

[3] Because this matter is before the Court on a motion to dismiss for failure to state a claim, the Court "recite[s] the facts as alleged in the plaintiff['s] complaint, accepting all well-pleaded facts as true and drawing all reasonable inferences in favor of the non-moving party." Abdisamad v. City of Lewiston, 960 F.3d 56, 57 (1st Cir. 2020) (quoting Squeri v. Mount Ida Coll., 954 F.3d 56, 61 (1st Cir. 2020)).

[4] In her complaint, Thornton refers to a COVID-19 testing policy, see SAC ¶¶ 4-6, but there appears to have been no testing policy and Thornton is challenging Ipsen's requirement that she be vaccinated for COVID-19.  See Docket No. 12 at 4; Docket No. 12-1.  At oral argument, counsel for Thornton confirmed that the references to a "testing" policy were erroneous.

by Ipsen.  Docket No. 7-1 at 3, 8.  Ipsen reviews all religious exemption requests "on a case-by-case basis, with due care and consideration."  Id. at 8.

On October 26, 2021, Thornton submitted a request for religious exemption from the Vaccination Policy.  SAC ¶ 6.  She stated, in relevant part, that:

> Receiving a vaccine (including the Covid 19 vaccine) goes against my personal, private and sincerely held religious beliefs.  Therefore, I am requesting a reasonable accommodation based on my religious convictions.  My long standing beliefs are sincerely held and firmly established in my faith, the Holy Bible and my awareness that what God has created is perfect.

Docket No. 12-1.  On November 2, 2021, Ipsen denied Thornton's request for a religious exemption and advised Thornton.  SAC ¶ 8.  Thornton attempted to appeal by written letter, even though Ipsen's policy failed to provide an appeal process.  Id.  Ipsen terminated Thornton's employment on November 10, 2021, for her failure to comply with the Vaccination Policy.  Id. at ¶ 9.

Thornton filed a claim with the Equal Employment Opportunity Commission ("EEOC") on November 16, 2021.  Id. at ¶ 13.  She received a Right to Sue Letter from the EEOC on August 30, 2022.  Id.  She filed her original complaint on November 22, 2022.  Docket No. 17 at 1.  The second amended complaint contains three counts: (1) violation of Title VII and M.G.L. c. 151B (SAC ¶¶ 22-26); (2) violation of her equal protection and equal treatment rights pursuant to the Fourteenth Amendment to the U.S. Constitution (SAC ¶¶ 27-32); and (3) violation of her substantive and procedural due process rights pursuant to the U.S. Constitution and the Massachusetts Declaration of Rights.  (SAC ¶¶ 33-39).

III.   ANALYSIS

    A.   Standard Of Review

A complaint must contain only "a short and plain statement of the claim showing that the

4

pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). To survive a motion to dismiss, the complaint "must contain sufficient factual matter . . . to state a claim to relief that is plausible on its face." Abdisamad, 960 F.3d at 59 (quoting Saldivar v. Racine, 818 F.3d 14, 18 (1st Cir. 2016)). "If the factual allegations in the complaint are too meager, vague, or conclusory to remove the possibility of relief from the realm of mere conjecture, the complaint is open to dismissal." Id. (quoting Barchock v. CVS Health Corp., 886 F.3d 43, 48 (1st Cir. 2018)).

In assessing the sufficiency of the complaint, the "court approaches the complaint as follows: it 'isolate[s] and ignore[s] statements in the complaint that simply offer legal labels and conclusions or merely rehash cause-of-action elements,' then 'take[s] the complaint's well-plead (i.e., non-conclusory, non-speculative) facts as true, drawing all reasonable inferences in the pleader's favor, and see[s] if they plausibly narrate a claim for relief.'" Sonoiki v. Harvard Univ., 37 F.4th 691, 703 (1st Cir. 2022) (citing Zell v. Ricci, 957 F.3d 1, 7 (1st Cir. 2020)). "Plausible, of course, means something more than merely possible, and gauging a pleaded situation's plausibility is a context-specific job that compels us to draw on our judicial experience and common sense." Id.

  B. Thornton Has Failed To State A Plausible Claim Of Religious Discrimination Under Title VII Or Chapter 151B

Thornton maintains that Ipsen's failure to grant her a religious exemption from the Vaccination Policy constitutes religious discrimination under Title VII and Chapter 151B. SAC ¶¶ 22-26. Religious accommodation claims are subject to the same analytical framework under both Title VII and Massachusetts law. See Mekonnen v. OTG Mgmt., LLC, 394 F.Supp.3d 134, 157 (D. Mass. 2019). The employee bears the initial burden of establishing a prima facie case that "the employer required the employee to violate a required religious practice," and "that he or she gave the employer the required notice of the religious obligations." Brown v. F.L. Roberts &

5

Co., Inc., 452 Mass. 674, 676 (2008).  The plaintiff must show that "a bona fide religious practice conflicts with an employment requirement and was the reason for the adverse employment action."  Sanchez-Rodriguez v. AT&T Mobility Puerto Rico, Inc., 673 F.3d 1, 12 (1st Cir. 2012) (citing Cloutier v. Costco Wholesale Corp., 390 F.3d 126, 133 (1st Cir. 2004)).

"The requirement that the employee have a 'bona fide religious belief' is an essential element of a religious accommodation claim.  Title VII does not mandate an employer or labor organization to accommodate what amounts to a 'purely personal preference.'"  E.E.O.C. v. Union Independiente de la Autoridad de Acueductos y Alcantarillados de P.R., 279 F.3d 49, 55-56 (1st Cir. 2002) (citing Vetter v. Farmland Indus., Inc., 120 F.3d 749, 751 (8th Cir. 1997)).  A bona fide religious belief is one that is both "religious" and "sincerely held."  Id.  Title VII's definition of religion includes "all aspects of religious observance and practice, as well as belief."  42 U.S.C. § 2000e(j); see also 29 C.F.R. § 1605.1 ("[R]eligious practices . . . include moral or ethical beliefs as to what is right and wrong which are sincerely held with the strength of traditional religious views.").  A belief is religious if it "addresses fundamental and ultimate questions having to do with deep and imponderable matters," are "comprehensive in nature," consisting of "a belief-system as opposed to an isolated teaching," and are accompanied by "certain formal and external signs."  Fallon v. Mercy Catholic Medical Center of Southeastern Pennsylvania, 877 F.3d 487, 491 (3d Cir. 2017).

In order to plausibly plead a claim of religious discrimination based on a vaccination policy, therefore, "[t]he complaint must allege some plausible set of facts from which it may be reasonably inferred *both* that [the plaintiff] believes in or practices a particular form of religion *and* that her religion has a specific tenet or principle that does not permit her to be vaccinated."  Griffin v. Massachusetts Dep't of Revenue, No. 22-cv-11991-FDS, 2023 WL 4685942, at *7 (D.

6

Mass. Jul. 20, 2023) (emphasis in original).[5]  Here, the second amended complaint contains only conclusory allegations that Thornton requested to be exempt from the Vaccination Policy due to her "sincerely held religious beliefs" but does not state what those beliefs were or how they relate to vaccines generally or the COVID-19 vaccine specifically.  See SAC ¶¶ 6, 9.  She does not allege that her religion requires her to observe certain medical limitations that include a refusal to take vaccines generally or the COVID-19 vaccine.

Rather, Thornton states that she was prevented from receiving the COVID-19 vaccine because "what God has created is perfect" and that "it would violate my sincerely held religious beliefs and jeopardize my soul and eternal salvation to go against God by defiling my perfectly created body that He created in His image by receiving the vaccine."  Docket No. 12-1 at 2; Docket No. 23 at 2.  Courts faced with the same or similar articulated belief as Thornton's have consistently held that such a conviction is not a bona fide religious belief but instead merely a "personal belief" or "isolated teaching."  See, e.g., Passarella v. Aspirus, Inc., No. 22-cv-287-jdp, 2023 WL 2455681, at *5 (W.D. Wis. Mar. 10, 2023) (employee's statement that she refuses the COVID-19 vaccine "as a Christian," because her "body is a temple of the Holy Spirit" did not articulate religious belief); see also Geerlings v. Tredyffrin/Eastown School District, No. 21-CV-4024, 2021 WL 4399672, at *7 (E.D. Pa. Sept. 27, 2021) (in challenge to mandatory mask policy in schools to mitigate spread of COVID-19, the court found that the belief that "the body is a temple and should not be harmed" is a medical or healthy living practice, not a religious practice).  Accordingly, Thornton has failed to plead sufficient facts to establish a prima facie

---

[5] This requirement is different from whether the complaint plausibly alleges that Thornton believes in God in her own individual way and that she holds that belief sincerely.  See Griffin, 2023 WL 4685942, at *1.  While this Court credits such assertions, they are not enough to plausibly state a claim of religious discrimination.  Id. at *6.

case that her refusal to get the COVID-19 vaccine was based on a religious practice or belief and therefore, she has failed to state a plausible claim under Title VII[6] or Chapter 151B.

    C.    Thornton's U.S. Constitutional Claims Fail As A Matter Of Law Because Ipsen Is A Private Entity

In Counts II and III of the second amended complaint, Thornton alleges that Ipsen violated her equal protection and substantive and procedural due process rights under the U.S. Constitution. SAC ¶¶ 27-39.[7] Ipsen, however, is a private entity. The U.S. Constitution "prohibits only actions by local, state, or federal government actors, and 'erects no shield against merely private conduct.'" Ward v. Schaefer, No. 16-12543-FDS, 2021 WL 1178291, at *28 (D. Mass. Mar. 29, 2021) (citing Shelley v. Kraemer, 334 U.S. 1, 13 (1948)). In order to bring a constitutional claim against Ipsen, therefore, its actions must be "fairly attributable to the state." Estades-Negroni v. CPC Hosp. San Juan Capestrano, 412 F.3d 1, 4 (1st Cir. 2005) (citing Lugar v. Edmondson Oil Co., 457 U.S. 922, 937 (1982)). "In other words, it must be fair to

---

[6] Ipsen also argues that Thornton's Title VII claim is time barred. Docket No. 7 at 6-7. Under Title VII, a claimant must file suit within 90 days of receiving notice of her right to sue from the EEOC. Abraham v. Woods Hole Oceanographic Institute, 553 F.3d 114, 119 (1st Cir. 2009) (citing 42 U.S.C. § 2000e-5(f)(1)). Thornton received her right to sue letter from the EEOC on August 30, 2022. SAC ¶ 13; see also Docket No. 17 at 69. As such, she had until November 28, 2022 to file a Title VII claim. She did not assert a Title VII claim until she filed the second amended complaint on May 2, 2023. See Docket No. 17 at 3. However, pursuant to Rule 15(c)(1)(B) of the Federal Rules of Civil Procedure, an amendment to a pleading relates back to the date of the original pleading when "the amendment asserts a claim or defense that arose out of the conduct, transaction, or occurrence set out—or attempted to be set out—in the original pleading." Fed. R. Civ. P. 15(c)(1)(B). Thornton's Title VII claim arises out of the same conduct, transaction, or occurrence set out in her original complaint. Accordingly, Thornton's second amended complaint relates back to November 22, 2022, the date of the filing of the original complaint and this Court declines to dismiss the Title VII claim on this ground.

[7] "It is well established that 'a litigant complaining of a violation of a constitutional right does not have a direct cause of action under the United States Constitution but [rather] must utilize 42 U.S.C. § 1983.'" Wilson v. Moreau, 440 F.Supp.2d 81, 92 (D.R.I. 2006) (citation omitted). Thornton, therefore, cannot bring a claim directly under the U.S. Constitution. Nevertheless, this Court will analyze her claims as if she had brought them under Section 1983.

Case 1:23-cv-11171-JCB   Document 26   Filed 10/26/23   Page 9 of 11

characterize [it] as [a] state actor[]." Id.

"It is '[o]nly in rare circumstances' that private parties can be viewed as state actors." Id. (citing Harvey v. Harvey, 949 F.2d 1127, 1130 (11th Cir. 1992)). The First Circuit has employed three tests to determine whether a private party fairly can be characterized as a state actor: the state compulsion test, the nexus/joint action test, and the public function test. Id. (citations omitted). At oral argument, Thornton's counsel clarified that she is arguing that Ipsen can be viewed as a state actor under the state compulsion and public function tests.

"Under the state compulsion test, a private party is fairly characterized as a state actor, when the state 'has exercised coercive power or has provided such significant encouragement, either overt or covert, that the [challenged conduct] must in law be deemed to be that of the State.'" Estades-Negroni, 412 F.3d at 5 (quoting Blum v. Yaretsky, 457 U.S. 991, 1004 (1982)). Thornton argues that the federal government coerced Ipsen to implement the Vaccination Policy pursuant to President Biden's Executive Order No. 14042 ("EO 14042"), which sought to require employees of certain federal contractors to be vaccinated against COVID-19 during the performance of contract work. See Docket No. 12 at 5. Thornton, however, has not alleged any facts to show that the federal government coerced Ipsen into implementing its own Vaccination Policy. See, e.g., Manning v. Whole Foods Market Group, Inc., No. 21-cv-10833-ADB, 2022 WL 194999, at *4 (D. Mass. Jan. 21, 2022) ("Although Plaintiff alleges that Massachusetts had a mask mandate and that it was a state custom to wear masks, he is not challenging the Massachusetts mask mandate and he has not alleged any facts to show that Massachusetts coerced Defendants into implementing or enforcing their own Mask Policy."). Indeed, EO 14042 was issued on September 9, 2021, two days after Ipsen's Vaccination Policy became effective on September 7, 2021 and, in any event, President Biden never enforced EO 14042,

9

ultimately revoking it on May 9, 2023.[8]

Finally, under the public function test, "it is not enough to show that the private actor performed a public function. The plaintiff must show that the private entity assumed powers 'traditionally *exclusively* reserved to the State.'" Rockwell v. Cape Cod Hosp., 26 F.3d 254, 258 (1st Cir. 1994) (emphasis in original; citations omitted). "Exclusivity is an important qualifier, and its presence severely limits the range of eligible activities." Santiago v. Puerto Rico, 655 F.3d 61, 69 (1st Cir. 2011). In fact, "[w]hile many functions have been traditionally performed by governments, very few have been 'exclusively reserved to the State.'" Flagg Bros. v. Brooks, 436 U.S. 149, 158 (1978). "A private business's implementation of an employee vaccination policy is not akin to any of 'those limited activities – for example running a city – that have 'traditionally *and exclusively*' been performed by the government.'" Reed v. Tyson Foods, Inc., No. 21-cv-0115-STA-jay, 2022 WL 2134410, at *4 (W.D. Tenn. June 14, 2022) (emphasis in original) (citing United States v. Miller, 982 F.3d 412, 423 (6th Cir. 2020)). Therefore, Thornton has not plausibly alleged that Ipsen is a state actor under the public function test.[9]

Accordingly, this Court finds that Thornton's U.S. constitutional claims fail because she has failed to plausibly plead state action.

---

[8] Thornton also cites to Executive Order 14043 ("EO 14043"), Docket No. 12 at 6, which sought to require all federal employees be vaccinated for COVID-19. EO 14043, however, has no applicability to Ipsen.

[9] To the extent that Thornton suggests that Ipsen is a state actor because it receives much of its funding from the federal government, see Docket No. 12 at 6, "[a] private party cannot be transformed into a state actor simply because it is paid with government funds for providing a service." Santiago, 655 F.3d at 72 (citations omitted); see also Rockwell, 26 F.3d at 258 ("[T]he receipt of federal funds . . . are insufficient to establish that a hospital or other entity acted under color of state law."). In addition, Thornton has not alleged in her complaint any facts to support this assertion.

   D. Thornton Cannot Bring A Private Cause Of Action
     <u>Under The Massachusetts Declaration Of Rights</u>

   Finally, in Count III of the second amended complaint, Thornton alleges that Ipsen violated her substantive and procedural due process rights under the Massachusetts Declaration of Rights.  SAC ¶¶ 33-39.  However, the Massachusetts Declaration of Rights does not provide a private right of action.  <u>Ward</u>, 2021 WL 1178291, at *27.  The Massachusetts Supreme Judicial Court ("SJC") has never held that such a right exists.  <u>Id.</u> (citing <u>Pimentel v. City of Methuen</u>, 323 F.Supp.3d 255, 273 (D. Mass. 2018)).  While the SJC suggested, 40 years ago, in dicta, that such a right "may" be available, no Massachusetts appellate court since has ever held that such a right exists.  <u>See id.</u> (citing <u>Phillips v. Youth Dev. Program, Inc.</u>, 390 Mass. 652, 657-658 (1983)).  It would be improper for this Court to recognize such a right.  <u>See</u> <u>Pimentel</u>, 323 F. Supp.3d at 274 (noting that "it is emphatically not the role of the federal courts to develop and expand upon state law").  Accordingly, this Court will dismiss Count III to the extent that it seeks to bring a claim under the Massachusetts Declaration of Rights.

IV. <u>ORDER</u>

   For the foregoing reasons, this Court grants Ipsen's motion to dismiss and dismisses Thornton's complaint in its entirety.

                 /s/ Jennifer C. Boal
                 JENNIFER C. BOAL
                 U.S. MAGISTRATE JUDGE